RECEIVED

MAR - 7 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CYNTHIA ELLIOTT AYERS, ET AL. | CIVIL ACTION NO. 10-925 (LEAD) |
| VERSUS | JUDGE TRIMBLE |
| ANR PIPELINE COMPANY, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is the "Motion to Enforce Settlement" filed by defendants ANR Pipeline Company and TransCanada USA Pipeline, LLC ("Defendants").[1] The court heard oral argument on this motion[2] and, now finding that the issues have been fully briefed and argued, concludes that Defendants' motion should be granted for the reasons expressed below.

Defendants' motion presents settlement documents, executed by nineteen Plaintiffs,[3] which it argues foreclose civil suits filed by these plaintiffs against them. The settlement documents at issue were executed following the release of chemicals from a compressor station ("Releases") owned by Defendants in 2009.

These documents include, inter alia, the following provisions:

> Whereas, on May 28, 2009, and June 14, 2009, ANR's Jena Compressor Station experienced a release of natural gas and possibly other constituents, which may have included condensate...
> Whereas, Individual has asserted claims or may assert potential claims, against ANR for damages to Individual's personal

---

[1] R. 68.
[2] R. 75, 80.
[3] Clayton Breland, Hilda Breland, Doyle Breland, Shelly Breland, Roger Breland, Adrian Juanita Breland, Josephine Breland, Barbara Caldwell Bradford, Amos Coley, Wanda Dees, William H. Edmonds, Lige Graham, Melinda Graham, Jimmy Hayes, Manuel Overstreet, Patricia Overstreet, Ben Whatley, Charles Ketchens and Nichole Ketchens.

1

property and real property, including individual's crops; and claims for personal injuries, including but not limited to physical, mental and emotional injuries; and claims for other consequential and incidental damages

\* \* \*

Individual releases and forever discharges ANR, its directors and officers, agents, employees, successors, and assigns ("Released Parties") and any affiliates of any of the Released Parties, of and from all Claims related in whole or in part to the Releases.

\* \* \*

"Claims" includes any and all causes of action, all claims for damages of any kind, and all costs and expenses to which Individual may be entitled in law or equity, whether known or unknown, and whether presently existing or hereafter arising.

\* \* \*

Individual represents and warrants that:

(a) he/she has carefully read this Settlement;
(b) he/she knows and understands the Settlement terms;
(c) he/she has signed this Settlement Agreement as his/her free and voluntary act;
(d) he/she has full legal authority to enter into this Settlement Agreement;
(e) by executing this Settlement Agreement, Individual is not relying on any statement or representation of ANR, but is relying upon its own judgment and/or the advice of its own legal counsel.[4]

The Plaintiffs who executed these Agreements filed suit against Defendants on or about May 20, 2010. Defendants' motion asserts that all Plaintiffs who were parties to the Settlement Agreements offered into evidence should not be permitted to maintain claims against Defendants in this court and should, instead, be held to the compromise of claims found in those Agreements.

---

[4] Copies of the Settlement Agreements at issue are found in the record at R. 68-3. Portions cited above may be found at, for example, R. 68-3, p. 1, ¶¶ 2,3 and 7.

2

Plaintiffs argue that the Settlement Agreements relied on by Defendants are void based on error as to the matter compromised. Specifically, Plaintiffs assert that Defendants' representatives knowingly misrepresented that the Releases contained no chemicals that might harm them or their children although they knew conclusively that the "condensates" included

> 1,2,4-Trimethylbenzene, 1,3,5-Trimethylbenzene, Benzene, Ethylbenzene, Isopropyl benzene, Methylcyclohexane, Naphthalene, n-Propylbenzene, Toluene, m,p-Xylene, o-Xylene, 1,2-Dicholoethane, 4-Bromoflourobenzene, Toluene-d8 and o-Terphenyl.[5]

Plaintiffs assert that had they been informed of the presence of these chemicals among the "condensates" and "constituents" referenced in the Settlement Agreements, none of them would have signed the Agreements. Counsel for Plaintiffs represented that, in particular, the mention of the chemical "benzene" would have immediately alerted Plaintiffs of the potential harm to themselves and their families and would have induced them to refuse settlement.

The parties agree that the Settlement Agreements at issue are properly characterized as compromise agreements under Louisiana law. La. Civ. C. Art. 3071 provides that

> [a] transaction or compromise is agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree upon, and which everyone of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be reduced to writing.

Plaintiffs assert that, based on Defendants' failure to disclose vital information concerning the actual chemical makeup of the broad category of "constituents" and "condensates," there is a dispute among the parties to the compromise as to what claims were actually compromised under La. Civ. C. Art. 3082. Plaintiffs also point out that none of those who executed Settlement Agreements were represented by counsel at that time.

---

[5] R. 74 at p. 2.

3

Defendants point out that Plaintiffs were not given a deadline by which to accept or reject the proposed Settlement Agreements and could have waited for the then-forthcoming report from the Louisiana Department of Environmental Quality or retained counsel to help review the content of the Settlement Agreements, but chose not to do so, instead accepting the negotiated cash settlements.[6]

As stated above, the parties agree that the Settlement Agreements at issue constitute compromises under Louisiana law. A compromise is a contract and is governed by the general principals of contract law and specific provisions concerning only compromise.[7] Compromise agreements are favored in the law and a party seeking to invalidate a compromise bears the burden of proof.[8] La. Civ. C. Art. 3082 provides that a compromise may be rescinded for "error, fraud, and other grounds for the annulment of contracts. Nevertheless, a compromise cannot be rescinded on grounds of error of law or lesion."

Plaintiffs arguments are vague and rest mainly on the contention that they did not know that the "constituents" and "condensates" of natural gas contained chemicals such as benzene. Plaintiffs assert that, had they been informed of the presence of benzene in the releases, none of them would have signed a Settlement Agreement.

The court finds these arguments insufficient to rescind the compromises confected among the parties in this case. Plaintiffs do not demonstrate that there was an error among the parties as to what claims were being compromised. Indeed the only claims at issue among them were potential personal and property damages from the Releases. Plaintiffs' failure to investigate the

---

[6] At oral argument, counsel for Defendants verified that each of the Plaintiffs at issue had, in fact, cashed the settlement proceeds checks issued by Defendants and no return of those funds had occurred as to any plaintiff at issue.

[7] Daigle v. Clemco Industries, 613 So.2d 619 (La. 1993); Hudson v. Progressive Sec. Ins. Co., 1 So.3d 627 (La. App. 2 Cir. 2008).

[8] Preston Law Firm, LLC v. Mariner Health Care Management Co., 622 F.3d 384 (5th Cir. 2010); Soileau v. Allstate Ins. Co., 857 So.2d 1264 (La. App. 3 Cir. 2003).

nature of their potential damages or to seek the advice of counsel is not a basis for a finding of error. Louisiana law strictly prohibits this court from providing a remedy when a contracting party claims error based on his own failure to read or understand the contents of a contract.[9]

The court also rejects plaintiffs' argument concerning alleged misrepresentations by representatives for Defendants. The plain and unambiguous language of the agreements signed by Plaintiffs attests that they signed such agreements based on their own reasoning and not as a result of any representation made to them.[10] We agree with the argument advanced by Defendants that, even in the absence of medical or legal advice, Plaintiffs could have found the information they claim was vital by conducting a Google search of the term "natural gas condensate."[11]

Moreover, plaintiffs show no duress in the formation of these agreements. Evidence before the court demonstrates that at least one plaintiff visited a doctor after being offered settlement and, after receipt of such medical advice, signed a Settlement Agreement.[12] Plaintiffs offer no evidence that they were prohibited from seeking medical or legal advice prior to accepting the settlement offers at issue.

In summary, the court finds no credible basis for Plaintiffs' arguments of error and fraud in the formation of the Settlement Agreements at issue and, accordingly, finds that Plaintiffs should be held to the bargain struck by those compromises. As a result, the court will issue a judgment dismissing all claims by such Plaintiffs with prejudice.

---

[9] Coleman v. Jim Walter Homes, Inc., 6 So.3d 179 (La. 2009); Aguillard v. Auction Management Corp., 908 So.2d 1 (La. 2005).
[10] R. 68-3, generally.
[11] The court's own Google search of the term "natural gas condensate" produced a multitude of results, including the following Wikipedia link which clearly lists "benzene, toluene, xylenes and ethylbenzene" as components of natural gas condensate: http://en.wikipedia.org/wiki/Natural-gas_condensate.
[12] R. 79 at pp. 5-6.

Alexandria, Louisiana
March  7 , 2012

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE